2021R00362/SMS

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Hammer |
| | : | |
| v. | : | Magistrate. No. 22-10117 |
| | : | |
| MICHAEL STRIK, AND CHRISTIAAN MEEUWISSE | : | **CRIMINAL COMPLAINT** |

I, David Rowinski, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the U.S. Food and Drug Administration, Office of Criminal Investigations, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

/s/ David Rowinski
David Rowinski, Special Agent
U.S. Food and Drug Administration,
Office of Criminal Investigations

Special Agent David Rowinski attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 17th day of March, 2022.

/s/ Hon. Michael A. Hammer
Hon. Michael A. Hammer
United States Magistrate Judge

**ATTACHMENT A**

**Count One**
**(Conspiracy to Commit Offenses Against the United States)**

From in or around 2016 through the present, in the District of New Jersey, and elsewhere, the defendants,

**MICHAEL STRIK, and**
**CHRISTIAAN MEEUWISSE,**

did knowingly and intentionally conspire and agree with each other and others to commit offenses against the United States, that is:

(1) to knowingly, willfully, and with intent to defraud the United States, smuggle, clandestinely introduce, and attempt to smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, and to make out and pass, and attempt to pass, through the customhouse any false, forged, and fraudulent invoice, and other document and paper, contrary to Title 18, United States Code, Section 545;

(2) to fraudulently and knowingly import and bring into the United States any merchandise contrary to law, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, contrary to Title 18, United States Code, Section 545;

(3) to knowingly effect any entry of goods, wares, and merchandise, at less than the true weight and measure thereof, and upon a false classification as to quality and value, and by the payment of less than the amount of duty legally due, in violation of Title 18, United States Code, Section 541;

(4) to enter and introduce, and attempt to enter and introduce, into the commerce of the United States any imported merchandise by means of any fraudulent and false invoice, declaration, affidavit, letter, paper, and by means of any false statement, written and verbal, and by means of any false and fraudulent practice and appliance, and to make any false statement in any declaration without reasonable cause to believe the truth of such statement, and procure the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any

      lawful duties, in violation of Title 18, United States Code, Section 542; and

(5) to, with the intent to defraud and mislead, introduce and deliver for introduction into interstate commerce any food that is misbranded, contrary to Title 21, United States Code, Sections 331(a) and 333(a)(2).

In violation of Title 18, United States Code, Section 371.

**Count Two**
**(Conspiracy to Defraud the United States)**

From in or around 2016 through the present, in the District of New Jersey, and elsewhere, the defendants,

**MICHAEL STRIK, and**
**CHRISTIAAN MEEUWISSE,**

did knowingly and intentionally conspire and agree with each other and others to defraud the United States and agencies thereof, namely, the United States Food and Drug Administration ("FDA") and United States Customs and Border Protection ("CBP"), by impeding, impairing, obstructing, and defeating the ability of the FDA and CBP to inspect, tax, approve, evaluate, and review food products imported into the United States and distributed in the United States, and to refuse admission of foods into United States and interstate commerce, in violation of Title 18, United States Code, Section 371.

### Counts Three through Thirty
### (Smuggling)

On or about the following dates, in the District of New Jersey, and elsewhere, the defendants,

**MICHAEL STRIK, and
CHRISTIAAN MEEUWISSE,**

did fraudulently and knowingly import and bring into the United States any merchandise contrary to law, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law:

| Count | Approximate Arrival Date | Approximate Units of Infant Formula |
|---|---|---|
| 3 | 5/19/2017 | 24 |
| 4 | 6/1/2017 | 24 |
| 5 | 5/1/2021 | 24 |
| 6 | 5/2/2021 | 24 |
| 7 | 5/3/2021 | 25 |
| 8 | 4/29/2021 | 12 |
| 9 | 5/12/2021 | 5 |
| 10 | 5/15/2021 | 18 |
| 11 | 5/15/2021 | 12 |
| 12 | 5/15/2021 | 6 |
| 13 | 5/17/2021 | 42 |
| 14 | 5/26/2021 | 6 |
| 15 | 5/29/2021 | 24 |
| 16 | 5/29/2021 | 24 |
| 17 | 5/29/2021 | 40 |
| 18 | 5/29/2021 | 60 |
| 19 | 5/30/2021 | 4 |
| 20 | 6/2/2021 | 4 |
| 21 | 6/6/2021 | 24 |
| 22 | 6/8/2021 | 4 |
| 23 | 6/8/2021 | 5 |
| 24 | 6/8/2021 | 1 |
| 25 | 6/10/2021 | 12 |
| 26 | 6/10/2021 | 24 |

| | | |
|---|---|---|
| 27 | 6/11/2021 | 40 |
| 28 | 6/11/2021 | 60 |
| 29 | 6/14/2021 | 24 |
| 30 | 6/16/2021 | 54 |

In violation of Title 18, United States Code, Sections 545 and 2.

**ATTACHMENT B**

I, David Rowinski, am a Special Agent of the United States Food and Drug Administration, Office of Criminal Investigations. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including business records and other documents. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

**RELEVANT INDIVIDUALS AND ENTITIES**

1. At all times relevant to this Criminal Complaint:

    a. Defendant Michael Strik ("DEFENDANT STRIK") and Defendant Christiaan Meeuwisse ("DEFENDANT MEEUWISSE") were citizens and residents of the Netherlands.

    b. The Defendants owned and operated several entities (collectively, the "Subject Companies") through which they transported and distributed infant formulas manufactured in Europe, including those that did not meet the requirements of federal law for marketing infant formula in the United States. The infant formulas manufactured in Europe that did not meet the requirements of federal law and that were caused to be imported, or offered for sale and import, into the United States by Defendants will be referred to as "Contraband."

    c. Individual-1 was a resident of the United States. From in or around 2015 through in or around June 2021, Individual-1 owned and operated multiple entities through which Individual-1 brought Contraband into the United States and distributed the same to U.S. customers.

**BACKGROUND ON UNITED STATES CUSTOMS AND BORDER PROTECTION**

   d. U.S. Customs and Border Protection ("CBP") was an agency of the United States government with the authority to inspect goods during the importation process. CBP was charged with protecting American consumers from harmful and counterfeit imports. CBP examined imported goods to determine if the shipment contained prohibited items. It was the legal responsibility of the individuals responsible for importing the goods to declare such information as is necessary to enable CBP to determine whether the merchandise may be released from CBP custody.

**BACKGROUND ON THE FDA, FOOD, DRUG, AND COSMETIC ACT ("FDCA"), AND INFANT FORMULA**

   e. The Food and Drug Administration ("FDA") was the federal agency responsible for protecting the health of the American public by ensuring, among other things, that foods were safe, wholesome, sanitary, and properly labeled. 21 U.S.C. § 393(b)(2)(A). FDA carried out its responsibilities by enforcing the FDCA and other pertinent laws and regulations. 21 U.S.C. § 301 et. seq.

   f. When items imported into the United States fit the description of FDA-regulated products (such as infant formula), CBP referred those entries to the FDA for review. Additionally, when products were imported into the United States with incomplete or inaccurate descriptions that indicated that those products may be FDA-regulated, those products could also be flagged for review by the FDA.

   g. The FDA, under its authority to administer the FDCA, reviewed imported shipments of FDA-regulated products, including infant formula, and determined whether those products may be admitted into the United States. The FDA may refuse admission to any products that appear to be misbranded or adulterated or otherwise violate certain provisions of the FDCA. 21 U.S.C. § 381(a).

   h. In order to protect the health and safety of the American public, the FDCA generally prohibited the introduction or delivery in interstate commerce of any food that was "misbranded." 21 U.S.C. § 331(a). A food, including infant formula, was deemed to be "misbranded" if:

     i. any word, statement, or other information required by or under the authority of the FDCA to appear on the label or labeling was not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary

>>conditions of purchase and use. 21 U.S.C. § 343(f);[1] or
>
>>ii. its labeling was false or misleading in any particular. 21 U.S.C. § 343(a).
>
>i. The FDCA defined "infant formula" as "a food which purports to be or is represented for special dietary use solely as a food for infants by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk." 21 U.S.C. § 321(z); 21 C.F.R § 106.3. An "infant" was a person not more than 12 months of age. 21 C.F.R. § 106.3.
>
>j. Under authority of the FDCA, the FDA implemented regulations that required very specific information to be contained on labeling of infant formula, including—in the order given in the table below, in the units specified, and in tabular format—the following information regarding the infant formula as prepared in accordance with label directions for infant consumption:
>
>>i. A statement of the number of fluid ounces supplying 100 kilocalories (in case of food label statements, a kilocalorie is represented by the word "Calorie"); and
>>
>>ii. A statement of the amount, supplied by 100 kilocalories, of each of the following nutrients and of any other nutrient added by the manufacturer:

---

[1] Food labeled solely in a language other than English was unlikely to be read and understood by the ordinary individual under customary conditions of purchase and use. *See* 21 C.F.R. § 101.15(c)(1).

| Nutrients | Unit of measurement |
|---|---|
| Protein | Grams. |
| Fat | Do. |
| Carbohydrate | Do. |
| Water | Do. |
| Linoleic acid | Milligrams. |
| Vitamins: | |
| Vitamin A | International units. |
| Vitamin D | Do. |
| Vitamin E | Do. |
| Vitamin K | Micrograms. |
| Thiamine (Vitamin $B_1$) | Do. |
| Riboflavin (Vitamin $B_2$) | Do. |
| Vitamin $B_6$ | Do. |
| Vitamin $B_{12}$ | Do. |
| Niacin | Do. |
| Folic acid (Folacin) | Do. |
| Pantothenic acid | Do. |
| Biotin | Do. |
| Vitamin C (Ascorbic acid) | Milligrams. |
| Choline | Do. |
| Inositol | Do. |
| Minerals: | |
| Calcium | Milligrams. |
| Phosphorus | Do. |
| Magnesium | Do. |
| Iron | Do. |
| Zinc | Do. |

| Nutrients | Unit of measurement |
|---|---|
| Manganese | Micrograms. |
| Copper | Do. |
| Iodine | Do. |
| Sodium | Milligrams. |
| Potassium | Do. |
| Chloride | Do. |

21 C.F.R. § 107.10.

      k.     Additionally, under authority of the FDCA, the FDA implemented regulations at 21 C.F.R. § 107.20 that required very specific directions for use that had to be on the product label for infant formula, to include directions for storage, dilution, and sterilization of water, bottle, and nipples.

      l.     All words, statements, and other information required by or under authority of the FDCA to appear on the label or labeling of food, including infant formula, had to appear thereon in the English language.[2] 21 C.F.R. § 101.15(c)(1). The FDCA defined "label" as "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The term "labeling," in turn, was broader and was defined as "all labels and other

---

[2] In the case of articles distributed solely in the Commonwealth of Puerto Rico or in a Territory where the predominant language is one other than English, the predominant language may be substituted for English. 21 C.F.R. § 101.15(c)(1).

written, printed, or graphic matter upon any article or any of its containers or wrappers or accompanying such article." 21 U.S.C. § 321(m). Thus, with the limited exception described in footnote 2, where the label of infant formula, including the detailed labeling described above, was not written in English, the infant formula was "misbranded" under the FDCA.

   m. Among the Contraband involved in this scheme were infant formulas that bore labels that were written entirely in a foreign language, including any nutritional information and directions for use. Also among the Contraband involved in this scheme were infant formulas with labeling, including labels, that otherwise did not bear the nutritional information and directions for use as required.

## THE SCHEME

 2. FDA and the Department of Homeland Security, Homeland Security Investigations ("HSI") have been investigating a large-scale scheme by the Defendants and others to unlawfully smuggle and distribute misbranded infant formula into the United States. The investigation has revealed that the Defendants have been surreptitiously transporting Contraband into the United States from in or around 2015 through the present.

### *The Defendants Agreed to Smuggle Contraband to Individual-1 for Distribution to U.S. Customers*

 3. Beginning in or around June 2015, the Defendants and Individual-1 began discussing arrangements for the Defendants to smuggle shipments of Contraband into the United States for Individual-1 to thereafter distribute to U.S. consumers.

   a. For example, in an October 2015 email exchange regarding the importation of Contraband into the United States, Individual-1 explained to DEFENDANT STRIK that breaking "down shipments [of infant formula to] 40 per box" might "take[] time, but I have found it to be the best method for delivery to the United States." When DEFENDANT STRIK responded that sending the infant formula in smaller shipments would make things more difficult for him, Individual-1 noted "that there can be problems with baby formulas" being brought into the United States.

 4. By in or around 2016, the Defendants had agreed with each other and Individual-1 to smuggle Contraband to Individual-1 in the United States for Individual-1 to thereafter distribute to consumers in the United States.

   a. CBP records confirm that at least as early as in or around April 2016, the Defendants (through the Subject Companies) began sending shipments to Individual-1.

b. In a September 2016 email from DEFENDANT STRIK to Individual-1 regarding their ongoing scheme, DEFENDANT STRIK proposed that the Defendants would supply all of Individual-1's needs for Contraband: "together we can supply all instead of you using other suppliers also[.]" DEFENDANT STRIK proposed that the Defendants and Individual-1 would work together to distribute "bigger volumes" of Contraband and noted that he and "Chris" [i.e. DEFENDANT MEEUWISSE] would be setting up an additional warehouse in the Netherlands for the storage of Contraband.

c. An invoice issued in or around October 2016 by one of the Subject Companies reflected that over approximately 51,000 Euros worth of Contraband was shipped from the Subject Companies in the Netherlands to Individual-1 in the United States. The invoice reflected that it was for approximately 12 separate shipments of suspected Contraband.

d. Thereafter, on or about April 6, 2017, DEFENDANT MEEUWISSE sent an email to Individual-1, copying DEFENDANT STRIK, and describing the scheme (the "April 2017 Email"). The April 2017 Email provided that the Subject Companies would "suppl[y] [Individual-1] with organic baby formula from Europe, which [Individual-1] sells through [her/his] website to consumers in the US. [The Subject Companies] send[] the products to the [Individual-1] warehouse from which [Individual-1] fulfills the orders for [his/her] clients."

5. The Defendants were aware that their scheme was unlawful.

a. For example, on or about August 1, 2016, Individual-1 received an FDA "Notice of Action" regarding a seized shipment of Contraband from the Defendants, which Individual-1 thereafter forwarded to DEFENDANT STRIK. The Notice provided that the Contraband was "subject to refusal" pursuant to the FDCA because it appeared to be "adulterated, misbranded, or otherwise in violation." The Notice thereafter enumerated specific sections of the FDCA that the Contraband violated, resulting in the product being misbranded. On or about August 3, 2016, Individual-1 received another FDA "Notice of Action" for another seized shipment of Contraband. Individual-1 also forwarded that Notice to DEFENDANT STRIK.

b. Similarly, in July 2020, attorneys for a domestic brand of infant formula sent a letter to DEFENDANT MEEUWISSE and others notifying them that the one of the brands of infant formula the Defendants were distributing was being promoted "to U.S. consumers in a manner that violates U.S. and European law."

    Regardless, the Defendants continued to transport and distribute the Contraband into the United States.

6. Rather than cease transporting Contraband into the United States, the Defendants strategized methods to avoid seizures and high import duties.[3] Among other methods, in order to avoid FDA and CBP detection, the Defendants falsely labeled shipments of Contraband as other products such as "Shampoos" or "cremes" and also misdeclared the value of the shipments.

  a. For example, in an email dated April 24, 2017, DEFENDANT STRIK advised Individual-1 as to how the Defendants falsely labeled the Contraband: "For commercial invoice always state: Personal use care items" and for the "Value" of the shipment he "would do always below 350-400 euro to avoid tax 17%.!!!" Subsequently in the email exchange DEFENDANT STRIK wrote to Individual-1, "Lets change the game moehahha[,]" likely referring to their continued efforts to conceal the contents of their shipments from United States authorities.

  b. Similarly, on or about October 16, 2020, DEFENDANT MEEUWISSE sent a text message to Individual-1 (copying DEFENDANT STRIK) which noted that they were continuing to act as a "guerilla" operation in the United States: "Suck's we're guerilla in north america[.] But good for prices!" The term "guerilla" likely referred to the surreptitious nature of their scheme. DEFENDANT MEEUWISSE's comment that this was good for prices in North America was likely an acknowledgement that the Defendants had the ability to charge high prices in the United States market because they were selling an unlawful product that they smuggled into the country.

7. Throughout the scheme, to further avoid detection by FDA and CBP, rather than ship large quantities of Contraband directly to Individual-1, the Defendants shipped the Contraband in small quantities to multiple residential addresses.

---

[3] According to the public harmonized tariff schedule, whereas the duty rate for shampoos, cremes, and porridge is 0%, the duty rate for infant formula is 17.5%. Similarly, while CBP does not assess duties on shipments that enter the United States that are valued below $800 dollars, this exemption is not available "in any case in which merchandise covered by a single order or contract is forwarded in separate lots" to avoid paying import duties. *See* 19 U.S.C. § 1321(a)(2).

a. For example, on or about October 16, 2020, DEFENDANT MEEUWISSE sent a text message to Individual-1 and DEFENDANT STRIK stating, "70 a day, let's keep the fda away."

b. Similarly, on or about February 23, 2021, DEFENDANT MEEUWISSE sent a text message to Individual-1 (on which DEFENDANT STRIK was copied) asking "[c]an we have more addresses to ship more…?" The Defendants shipped their products to these residential addresses to avoid detection and knowing that Individual-1 and/or other co-conspirators in the United States would thereafter collect the shipments in order to distribute the Contraband to consumers throughout the United States.

8. CBP tracked and seized numerous shipments that listed the shipper as DEFENDANT MEEUWISSE via one of the Subject Companies. The seizures confirmed that the Defendants falsely declared the Contraband as, among other things, "Shampoos Cremes," to smuggle the Contraband into the United States, including the following seized shipments of Contraband:

| Approximate Arrival Date | Manifest Description | Approximate Units of Infant Formula |
|---|---|---|
| 5/1/2021 | PERSONAL USE SHAMPOOS CREMES - HOU | 24 |
| 5/2/2021 | PERSONAL USE SHAMPOOS CREMES - HOU | 24 |
| 5/3/2021 | PERSONAL USE SHAMPOOS CREMES - HOU | 25 |
| 5/29/2021 | PERSONAL USE SHAMPOOS CREMES - HOU | 24 |
| 5/29/2021 | PERSONAL USE SHAMPOOS CREMES - HOU | 24 |
| 5/29/2021 | PERSONAL USE SHAMPOOS CREMES - HOU | 40 |
| 5/29/2021 | PERSONAL USE - SHAMPOOS CREMES - H | 60 |
| 6/6/2021 | PERSONAL USE SHAMPOOS CREMES BATH | 24 |
| 6/11/2021 | PERSONAL USE SHAMPOOS CREME BATH | 60 |
| 6/14/2021 | PERSONAL USE SHAMPOOS CREMES SHOWE[4] | 24 |

9. According to CBP records, between on or about April 17, 2021, and on or about June 17, 2021, at least approximately 480 shipments with the same

---

[4] CBP systems cut off the manifest descriptions at a set character limit. Nonetheless, the characters available confirm that, as the investigation has otherwise revealed, the false descriptions utilized by the Defendants included "shampoos—"SHAM" or "SHAMP"—as well as "porridge"—"PORR" and shower—"SHOWE."

or similar descriptions to those listed above were sent by DEFENDANT MEEUWISSE via the Subject Companies to recipients in the United States. The total declared value of those shipments was approximately $95,229.00. Based on the investigation, law enforcement has reason to believe that those items included Contraband and that the actual value far exceeded the declared value.

10. The Defendants considered the seizure of shipments of Contraband by FDA and CBP as a cost of doing business. For example, in the April 2017 Email, DEFENDANT MEEUWISSE wrote that with respect to certain parcels that had been seized, the Subject Companies would "send[] those parcels again to you free of charge" using a different delivery company. By contrast, DEFENDANT MEEUWISSE also proposed to Individual-1 that with respect to a larger pallet of Contraband (as opposed to smaller parcels) that had been destroyed after a failed attempted entry into the United States, the cost "should also be absorbed by both of us in this case of failure" "[b]ecause this was a test that could benefit both of us in case it was successful."

11. The Defendants and Individual-1 continued to engage in the scheme despite seizures by CBP. For example, on or about May 26, 2021, Individual-1 sent a text message to the Defendants describing numerous packages seized by CBP and noting that the seizures would require Individual-1 to identify new addresses for the Defendants to ship the Contraband:

> So we have 20+ parcels stuck in customs[.] These are all the ones I had told you Mike [DEFENDANT MEEUWISSE] we should hold of [sic] on sending, but you made a mistake of not sending stage 1 and not caring at all about your prized possession that's me. Because without me here in america doing "our" illegal activities we as a company have nothing, am now being harassed by several customs agents and our names and addresses are worth shit again,

12. Law enforcement has reviewed tracking information and photographs of the following specific shipments of Contraband sent by the Defendants (through the Subject Companies) to Individual-1 for subsequent distribution to U.S. consumers after the text message exchange on May 26 regarding the seized shipments. The packaging for the shipments revealed that they similarly utilized false descriptions of their contents and were shipped to false addresses (i.e. not directly to Individual-1) in furtherance of the scheme:

| Approximate Arrival Date | Manifest Description | Approximate Units of Infant Formula |
|---|---|---|
| 6/10/2021 | Personal use shampoos cremes shower | 24 |
| 6/11/2021 | Personal use-shampoo cremes Swiss | 40 |
| 6/16/2021 | Personal use-shampoo cremes | 54 |

*The Defendants Agreed to Smuggle Contraband Directly to Individual-1's U.S. Customers*

13.     The Defendants also conspired with Individual-1 to ship Contraband directly from Europe to individual customers of Individual-1 in the United States. In the April 2017 Email sent by DEFENDANT MEEUWISSE to DEFENDANT STRIK and Individual-1, DEFENDANT MEEUWISSE described a "Wholesale" strategy where they have "a website where US consumers can order organic baby formula from Europe, which [one of the Subject Companies] will send from our warehouse in NL directly to the consumers in the US." Through a review of shipping records, law enforcement has confirmed that, as part of the "wholesale" strategy, the Defendants (through the Subject Companies) shipped numerous packages of Contraband directly to consumers in New Jersey, including the following:

| Approximate Arrival Date | Manifest Description | Approximate Units of Infant Formula |
|---|---|---|
| 5/19/2017 | Merchandise | 24 |
| 6/1/2017 | GIFT | 24 |
| 4/29/2021 | 12 HICPRE OS#537334 -PERSONAL USE | 12 |
| 5/12/2021 | 5 LW1 OS#231561 -PERSONAL USE DRIE | 5 |
| 5/15/2021 | 18 HPRE OS#231623 -PERSONAL USE DR | 18 |
| 5/15/2021 | 6 HG1 + 6 HG3 OS#543512 -PERSONAL | 12 |
| 5/15/2021 | 6 HG1 OS#231651 -PERSONAL USE SHAM | 6 |
| 5/17/2021 | 42 H1 OS#231620 -PERSONAL USE DRIE | 42 |
| 5/26/2021 | 6 HA1 OS#547035 -PERSONAL USE DRIE | 6 |
| 5/30/2021 | 4 LL1 OS#549735 -PERSONAL USE PORR | 4 |
| 6/2/2021 | 4 NL1 OS#550186 -PERSONAL USE PORR | 4 |
| 6/8/2021 | 4 LL2 OS#553098 -PERSONAL USE DRIE | 4 |
| 6/8/2021 | 5 LW1 OS#553578 -PERSONAL USE SHAM | 5 |
| 6/8/2021 | 6 H1 OS#552824 -PERSONAL USE SHAMP | 1 |
| 6/10/2021 | 12 LL1GR OS#553637 -PERSONAL USE S | 12 |

14.     As part of the scheme described above, from in or around 2016 through in or around 2021, the Defendants received approximately $27 million in payouts from Individual-1 in exchange for shipments including Contraband that the Defendants illicitly transported into the United States for distribution in interstate commerce.

***The Defendants Agreed to Smuggle Contraband Directly to the Defendants' Own U.S. Customers***

15.  In or around March 2020, the Defendants purchased a website (the "Subject Website") to market and ship Contraband directly to consumers in the United States. Law enforcement has reviewed the Subject Website and determined that it offers Contraband for sale, direct-to-consumer, in the United States.

16.  On or about September 29, 2021, law enforcement agents conducted an undercover purchase of Contraband from the Subject Website. The Contraband was thereafter shipped by the Defendants from the Netherlands directly to an address in New Jersey and was falsely declared to CBP as "DRIED CHILD PRODUCTS PERSONAL USE NON COMMERCIAL." Law enforcement's inspection of the shipment revealed that the product was misbranded Contraband, insofar as, among other things, it was an infant formula whose product label was entirely in a foreign language.

17.  Law enforcement's review of records of shipments sent by the Subject Website from the Netherlands to the United States revealed that between June 2021 and March 2022, the Defendants (through the Subject Website) sent approximately 30,000 shipments including Contraband into the United States, totaling over $3 million in declared value.